```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA
                                    )
ELDON N. WATSON, III                )   No. 05-0212
                                    )
                                    )
     Plaintiff,                     )   Judge Joy Flowers Conti
                                    )
     v.                             )   Magistrate Judge
                                    )   Francis X. Caiazza
                                    )
DR. LAWRENCE CONNELLY,              )
Individually, and as                )
Superintendent of                   )
Mercer Area School District;        )
Dr. MICHELLE RHULE,                 )
Individually,                       )
and as Principal of the Mercer      )
Area Elementary School; and         )
MERCER AREA SCHOOL DISTRICT,        )
                                    )
     Defendants.                    )
                                    )
```

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

Eldon N. Watson, III ("Watson") alleges that he suffered age and gender discrimination in violation of state and federal law when he was not hired as an elementary school teacher in the Mercer Area School District("the District"). He also contends that the District retaliated against him for filing charges of discrimination by drastically reducing the number of times that he was called to substitute teach. The defendants have filed a motion to dismiss Watson's second amended complaint. It is respectfully recommended that this motion be granted in part and

1

denied in part.

## II. REPORT

### A. Background

In ruling on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all of the factual allegations of the complaint as true and draw all reasonable inferences from them in the light most favorable to Watson. Weiner v. Quaker Oats Co., 129 F.3d 310, 315(3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

According to the second amended complaint, Watson, who was born in April 1955, began substitute teaching in the District elementary school in 1999. In each academic year from 1999 through 2002, Watson worked in excess of 100 days. In April 2002, Watson applied for one of several permanent elementary school teacher openings in the District. At the time of his application, Watson held a B.S. degree, and a permanent certification in Elementary Education for grades K-6. Dr. Michelle Rhule, the principal of the District elementary school interviewed Watson with a District School Board member, Albert French, present.

On May 9, 2002, Watson learned that he had not been hired. Later that month, he was informed that the open positions had

been filled by four women who were 24 years younger than Watson, and by one woman who was eight years younger. According to Watson, French described the women as "more enthusiastic."

A sixth elementary school teaching position, for which Watson apparently did not apply, was filled in January of 2003 with a male applicant 26 years Watson's junior.  According to Watson, he had accumulated more days in the classroom than the total days taught by the six teachers who were hired, and had vastly superior credentials and experience. He contended that Rhule's failure to hire him was a result of age and gender discrimination evidenced by a trend "since the 1990's" toward hiring females and a "policy that favored the hiring of younger applicants over applicants who were [Watson's age]." According to Watson, Rhule had "never hired an individual over the age of 40...."

Watson first raised the issue of age discrimination at a school board meeting in July 2002. He did not receive a satisfactory response. During the following academic year, 2002-2003, Rhule asked Watson to substitute teach only once. Larry Connelly, the District's Superintendent of Schools, explained to Watson that Rhule's reluctance to call him resulted from discomfort on the part of other elementary teachers. Connelly reported that the teachers had to "look over their shoulders," and "be careful of everything they say" because of Watson's

allegations of age discrimination.

After administrative proceedings with the Equal Opportunity Commission and the Pennsylvania Human Relations Commission, Watson filed this suit.  Count I alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, ("ADEA"); Counts II and III allege age and gender discrimination respectively, in violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 955 et seq.,("PHRA"); and Count IV is based on claims of retaliation in violation of the ADEA and the PHRA.

The Defendants' motion to dismiss portions of the amended complaint is pending.

### B. Analysis

#### 1. The Liability of Individuals Under the ADEA

Defendants Connelly and Rhule ask that Counts I and IV of the complaint - the ADEA claims - be dismissed as to them because they are not "employers" within the meaning of that act.  The ADEA defines "employer" as a "person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year [or] any agent of such a person." 29 U.S.C. § 630(b).

Although the Court of Appeals for the Third Circuit has not focused on this section of the ADEA, it has held that employees

are not subject to individual liability under Title VII. Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061, 1087 (3d Cir. 1996). The Court of Appeals has also held that "the ADA, the ADEA, and Title VII all serve the same purpose - to prohibit discrimination in employment against members of certain classes." Schumacher v. Souderton Area School Dist., 2000 WL 72047(E.D. Pa. 2000) (quoting Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir. 1995)). The methods and manner of proof under each of these statutes should inform standards under the others. Id.

Notably, Title VII and the ADEA define "employer" in virtually identical terms. Holocheck v. Luzerne County Head Start, Inc., 385 F.Supp.2d 491 (M.D. PA. 2005). This common definition has been interpreted to preclude individual liability on the part of company officers, supervisors, or managers under Title VII. Moreover, every district court in this circuit and a majority of the courts of appeals addressing the issue have held that the ADEA incorporates the same preclusion. McDowell v. AXYS Technologies Corp., 2005 WL 1229863 at *4 (D.N.J.)(collecting cases).

Because they are not employers within the meaning of the ADEA and, consequently, cannot be held individually liable for acts violating that statute, Counts I and IV of the complaint should be dismissed with prejudice as to defendants Rhule and

Connelly.

   2. **Claims Against Individuals in their Official Capacities**

Rhule and Connelly next ask that the court dismiss claims made against them in their official capacities. This request in essence, asks the court to eliminate a redundancy in the complaint. Watson's claims against the District are based upon alleged misconduct of District employees. Where those claims are made against Rhule and Connelly in their official capacities, the claims are indistinguishable from claims made against the District itself. These official capacity claims are, therefore, surplusage. Including them in the complaint is no different than naming the District multiple times in each count. Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 431-32 (E.D. Pa. 1998). Ultimately, if the individual defendants in their official capacities have acted improperly, the District will be liable, and will fund any damage award. Dismissing claims made against Rhule and Connelly in their official capacities does not compromise Watson's legal position. Id., at 432.

In the interest of clarity and technical accuracy, the court should dismiss all claims in each count of the complaint made against Rhule and Connelly in their official capacities.

   3. **The Availability of Punitive Damages Under the ADEA**

The final argument made in the Defendants' motion to dismiss

concerns the availability of punitive damages. The District contends that because it is a governmental entity, it is insulated from these claims. This contention is not supported by the case law.

In Potence v. Hazleton Area School Dist., 357 F.3d 366 (3d Cir. 2004),the Court of Appeals for the Third Circuit held that punitive damages may be assessed against a Pennsylvania school district where the district has violated the ADEA. In arriving at this conclusion, the Court cited provisions of the Fair Labor Standards Act ("FLSA"):

> The ADEA incorporates the enforcement powers, remedies, and procedures of the [FLSA] set forth in 29 U.S.C. § 626(b), 216 (except for subsection (a)), and 217. 29 U.S.C. § 626(b). The enforcement provision of the FSLA expressly provides for imposition of liquidated damages payable "in cases of willful violations of this chapter. . . [W]hen a jury finds that an employer willfully violated the ADEA, the basic damage award may be doubled under this liquidated damages provision.

Id., at 372.  The Court recognized that the liquidated damages provision of the ADEA is and was intended to be punitive, Starceski v. Westinghouse Elec. Corp., 54 F.3d 1084, 1095 (3d Cir. 1995), and that historically, municipalities were not subject to the imposition of punitive damages. This general rule has not changed, except where a governing statute specifically authorizes an exemplary damage award.

Based upon its review of each relevant aspect of the ADEA,

7

the Court of Appeals was convinced that Congress intended to make punitive damages available to an injured plaintiff:

> Included in the ADEA's definition of employer is a "State or political subdivision of a State and any agency or instrumentality of a State or a sub-division of a State." 29 U.S.C. § 630(b). The ADEA could not be more explicit in imposing liability for age discrimination against municipalities. Similarly explicit is the ADEA's contemplation of liquidated damages, as it states in pertinent part "[t]hat liqui-dated damages shall be payable only in cases of will-ful violations of this chapter." 29 U.S.C. § 626(b). The FLSA provisions incorporated in the ADEA pro-vide for the imposition of liquidated damages "against any employer (including a public agency)," 29 U.S.C. § 216(b), and the statutory definition of a "public agency" includes "State[s] or political subdivision[s] thereof," 29 U.S.C. § 203(x).

Potence, 357 F.3d at 373. According to the Court, this language established that a municipal entity may be liable for punitive damages under the ADEA where it has engaged in a willful violation of the Act.[1]

At this stage of the proceedings, the court cannot say that Watson will be able to show willful discriminatory conduct on the part of the District. At the same time, we cannot say that he will not be able to make the required showing. The motion to dismiss Watson's request for liquidated damages under the ADEA should be denied.

---

1. "A violation of the ADEA is willful if the 'employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" Overlie v. Owatonna Indep. School Dist., 341 F. Supp 1081, 1093 (D. Minn. 2004) (quoting Trans World Airlines, Inc. v. Thurston,, 469 U.S. 111, 126 (1985)). A violation is not willful if the employer knew only the potential applicability of the ADEA. Id.

### 4. <u>Availability of Punitive Damages Under the PHRA</u>

The Defendants also ask that the court dismiss Watson's claim for punitive damages under the PHRA.  Because Pennsylvania law establishes that punitive damages are <u>not</u> available under the Act, the PHRA claims in Counts II, III, and IV of Watson's complaint should be dismissed.

The Supreme Court of Pennsylvania discussed punitive damages in actions filed pursuant to the PHRA in <u>Hoy v. Angelone</u>, 554 Pa. 134 (1998). The Court turned first to the damages provision of the Act:

> If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes [sic] granting of back pay, or any other legal or equitable relief as the court deems appropriate . . . .

<u>Id.</u>, at 140 (quoting 43 Pa. C.S.A. §962(c)(3)).

This provision, in contrast to the damages section of the ADEA, does not include a specific reference to punitive damages. The Supreme Court of Pennsylvania found this to be highly relevant. Although the legislature "knew how to provide for punitive damages in clear and unambiguous terms," it declined to do so in the PHRA. <u>Id.</u>, at 141. In view of what it termed "the General Assembly's ... intention to allow [punitive damages] only when expressly provided for," the Pennsylvania Court also

9

declined to infer the availability of punitive damages, finding that the PHRA permits only affirmative relief. Id.  In support of its conclusion, the Court stressed the remedial nature of the PHRA: "Punitive damages are not consistent with achieving the remedial purposes of the statute and are not a make-whole remedy. Punitive damages are. . . purely penal in nature." Id., at 142.

Based on statutory construction, the nature and purpose of the PHRA, and its conviction that the Legislature did not intend to permit exemplary damages, the Pennsylvania Supreme Court barred the award of punitive damages premised on a violation of the PHRA.  In view of this holding, Watson's claims for punitive damages under the PHRA  in Counts II, III, and IV of the complaint should be dismissed.


### C. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss Watson's complaint should be granted in part and denied in part.

In accordance with the Magistrates Act, 29 U.S.C. § (b) (1) (B), 636 (b) (1) (b) and(c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by November 14, 2005. Responses to objections are due by November 25, 2005.

October 27, 2005

<u>s/ Francis X. Caiazza</u>
Francis X. Caiazza
U.S. Magistrate Judge

cc:
Brian Samuel Malkin, Esq.
Malone Middleman, P.C.
Northridge Office Plaza
117 VIP Drive, Suite 310
Wexford, PA  15090


John W. Smart, Esq.
Todd P. Prugar
Andrews & Price
1500 Ardmore Blvd., Suite 506
Pittsburgh, PA  15221